# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
GINA OTEY WILSON,              )
                               )
        Petitioner,            )
                               )
        v.                     )    1:12CR187-1
                               )    1:13CV783
UNITED STATES OF AMERICA,      )
                               )
        Respondent.            )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 18).[1]  For the reasons that follow, the Court should deny Petitioner's Section 2255 Motion.

## INTRODUCTION

This Court (per Chief United States District Judge William L. Osteen, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, a prison term of 48 months, as a result of her guilty plea to using a communication facility to cause/facilitate the distribution of cocaine hydrochloride and marijuana, in violation of 21 U.S.C. § 843(b).  (Docket Entry 11; see also Docket Entry 1 (Information); Docket Entry 2 (Waiver of Indictment); Docket Entry 3 (Plea Agreement); Docket Entry dated

---

[1] Parenthetical citations refer to Petitioner's criminal case.

May 17, 2012 (documenting guilty plea); Docket Entry dated Sept. 12, 2012 (documenting sentencing); Docket Entry 28 (Plea Hrg. Tr.); Docket Entry 29 (Sent'g Hrg. Tr.).)  Petitioner did not appeal. (See Docket Entry 18, ¶ 8; see also Docket Entries dated Sept. 12, 2012, to present.)  She did, however, timely file her instant Section 2255 Motion (Docket Entry 18), along with a Memorandum of Law in Support (Docket Entry 19).  The United States responded (Docket Entry 31) and Petitioner replied (Docket Entry 34).[2]

More than three months after the United States filed its Response to Petitioner's Section 2255 Motion, by letter addressed to Judge Osteen, which Petitioner dated August 24, 2014, and which the Clerk docketed on August 27, 2014 ("August 2014 Letter"), Petitioner identified what she described as "some concerns that the Court may have been mislead [sic] by [] the AUSA [Assistant United

---

[2] With her Reply, Petitioner submitted a copy of the Sentencing Memorandum filed in advance of her sentencing hearing by her counsel (compare Docket Entry 35, with Docket Entry 9), as well as a Sworn Declaration (Docket Entry 36).  In light of Local Criminal Rule 32.3(a), the Clerk separately docketed under seal the copy of the Sentencing Memorandum submitted by Petitioner (Docket Entry 35), consistent with the treatment given to the originally-filed Sentencing Memorandum (Docket Entry 9).  The particular manner of the electronic docketing of that original filing apparently has prevented its viewing even by the United States (see Docket Entry 31 at 11 n.6), which, in turn, has caused Petitioner to (mistakenly) accuse her counsel of "not exhibiting reasonable fitness to carry out [his] significant obligation [to] make sure such an important document with it's [sic] exhibits had been in fact placed on the record" (Docket Entry 34 at 6).  In any event, the Sentencing Hearing Transcript makes clear that the Court received (and reviewed) the Sentencing Memorandum in advance of Petitioner's sentencing.  (See, e.g., Docket Entry 29 at 12, 15.)

2

States Attorney] in [Petitioner's] case." (Docket Entry 39 at 1.) The August 2014 Letter purports to compare various aspects of Petitioner's Plea Hearing Transcript, Sentencing Hearing Transcript, and Presentence Report ("PSR") to a document filed in a related case (i.e., Factual Basis in Support of Guilty Pleas, United States v. Shepherd, 1:12CR76, Docket Entry 57 (M.D.N.C. May, 14, 2012)). (See Docket Entry 39 at 1-5; see also Docket Entry dated May 17, 2012 (identifying Shepherd as related case).)[3] In the conclusion of her August 2014 Letter, Petitioner asked that those comparisons "be added to the record with respect to [her Section] 2255 [M]otion." (Docket Entry 39 at 5.)[4]

---

[3] At the time of the filing of the Information in this case, Petitioner was "under Indictment in case number 1:12CR76[], which charge[d] her in Count One with a violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A), conspiracy to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, and 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana; and which charge[d] her in Count Two with a violation of Title 21, United States Code, Section 856(a)(1), maintaining drug-involved premises." (Docket Entry 3, ¶ 1.) As part of Petitioner's agreement to plead guilty to the Information in this case, the United States agreed to dismissal of the foregoing charges against her. (See id., ¶ 6.a.; see also Docket Entry 29 at 33 (ordering dismissal as agreed).)

[4] "Federal Rule of Civil Procedure 15(a) . . . spells out the standards for amending pleadings." United States v. MacDonald, 641 F.3d 596, 616 (4th Cir. 2011); see also id. at 616 n.12 ("Rule 15 is applicable to § 2255 motions by way of 28 U.S.C. § 2242, Federal Rule of Civil Procedure 81(a)(4), and Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts."). Under said Rule, Petitioner could amend her Section
(continued...)

3

DISCUSSION

Petitioner's Section 2255 Motion asserts these four grounds:

1) "Variance & Ineffective Counsel" based on an alleged "[v]ariance between the elements presented to the [G]rand Jury, and elements and statute [Petitioner] pled guilty under [as well as] [d]enial of Safety Valve[,] [d]isparity among defendants [sic] sentences [and] [l]ack of evidence, intent or knowledge, [which] led [Petitioner] to plead guilty to a crime she did not commit, and was never charged by the Grand Jury" (Docket Entry 18, ¶ 12.A. (internal parenthetical numbers omitted));

2) "Ineffective Counsel" related to the "Court['s] fail[ure] to properly consider [Petitioner's] severe medical and mental issues" (id., ¶ 12.B.);

3) "Ineffective Counsel" because the "[C]ourt failed to adhere to the Spirit of the Law in regard to sentencing as set forth by

---

[4](...continued)
2255 Motion once as a matter of course up until 21 days after the United States responded. See Fed. R. Civ. P. 15(a)(1). "In all other cases, [she could] amend [her Section 2255 Motion] only with the opposing party's written consent or the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). Because Petitioner submitted her August 2014 Letter more than three months after the United States filed its Response to her Section 2255 Motion and the record reflects no written consent to amendment from the United States, Petitioner could not use her August 2014 Letter to amend her Section 2255 Motion without leave of the Court (which she has not clearly sought, much less obtained). Nonetheless, out of an abundance of caution, the undersigned Magistrate Judge has fully considered all of the material referenced in the August 2014 Letter in assessing the viability of Petitioner's Section 2255 Motion.

the Supreme Court of the United States[,] . . . failed to take into consideration [Petitioner's] mental and emotional, and physical abuse suffered at the hands of her co-defendant and ex-husband . . . [and] failed to follow Supreme Court precedent and consider the least amount of imprisonment pursuant to [18 U.S.C. §] 3553(a)" (id., ¶ 12.C. (internal parenthetical numbers omitted)); and

4) "Ineffective Counsel" premised on the allegation that Petitioner's "plea was not knowingly, intelligently, and voluntarily entered" (id., ¶ 12.D.).

To make out an ineffective assistance claim, Petitioner must show that her counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687–94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel [i]s not constitutionally ineffective in failing to [take an action where] . . . it would have been futile for counsel to have done so . . . .").

### Grounds One and Four: Variance and Ineffective Counsel (Safety Valve, Sentencing Disparity, and Invalid Guilty Plea)

In Ground One, Petitioner initially complains of a "[v]ariance between the elements presented to the [G]rand Jury, and [the]

5

elements and statute [she] pled guilty under." (Docket Entry 18, ¶ 12.A.) This claim (whether viewed as a challenge to the lawfulness of her plea or as an assertion that her counsel provided ineffective assistance) fails as a matter of law because Petitioner knowingly waived indictment and pleaded guilty to an Information, via both a written agreement and a judicial colloquy that fully satisfied Federal Rule of Criminal Procedure 11(b). (See Docket Entry 2 at 1; Docket Entry 3, ¶¶ 2-5, 6.d.; Docket Entry 28 at 8-30.) Those circumstances also defeat the claim in Ground One that Petitioner "plead[ed] guilty to a crime she did not commit, and [for which she] was never charged by the Grand Jury" (Docket Entry 18, ¶ 12.A.), as well as the claim in Ground Four that her "plea was not knowingly, intelligently, and voluntarily entered" (id., ¶ 12.D.), whether such claims challenged her plea directly or the adequacy of her counsel's related advice.

Simply put, "[a] defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal brackets, citations, ellipses, and quotation marks omitted). "Thus, in the absence of extraordinary circumstances, . . . a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on

6

allegations that contradict the [defendant's] sworn statements."
Id. at 221-22. Petitioner has shown no extraordinary circumstances
(see Docket Entry 18, ¶ 12.A. & D.; Docket Entries 19, 34, 36, 39)[5]
and her foregoing collateral attacks therefore fall short.

---

[5] Petitioner's August 2014 Letter asserts that she "did not have amp [sic] amount of time to contemplate the 'favorable' plea offer [she ultimately accepted]." (Docket Entry 39 at 1.) The record, however, refutes that assertion:

> THE COURT: And have you fully discussed the charge contained in that information and the case in general with [your counsel]?
> THE DEFENDANT: Yes, sir.
> . . . .
> THE COURT: Are you fully satisfied with the services of [your counsel] and his counsel, representation, and advice?
> THE DEFENDANT: Yes, sir.
> . . . .
> THE COURT: And have you had enough time to review the plea agreement and discuss it with [your counsel]?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand all the terms of your plea agreement?
> THE DEFENDANT: Yes, sir.

(Docket Entry 28 at 16-18 (emphasis added); see also id. at 2-8 (documenting continuance of Petitioner's plea hearing from 11:41 a.m. to 4:35 p.m., to allow her additional time to consult with her counsel about plea offer).) Petitioner's August 2014 Letter also complains that "[t]here was no factual basis filed on [her] case." (Docket Entry 39 at 3.) The record, however, reflects that, at her plea hearing, the Court (per Judge Osteen) "reserve[d] judgment on the factual basis" (Docket Entry 28 at 32; see also id. at 31-32 (showing that Petitioner agreed to Court "withholding the factual basis and making a finding based on the [PSR]")) and that, at sentencing, Petitioner conceded (under oath) that the information set out in paragraphs six through 17 of her PSR, supplemented by an oral proffer from the United States, constituted a valid factual basis for her guilty plea (see Docket Entry 29 at 4-8).

7

Moreover, to the extent Grounds One and Four contend Petitioner received inept counsel regarding her plea, in addition to overcoming her sworn statements knowingly and voluntarily pleading guilty, she "must show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner has made no such showing. (See Docket Entry 18, ¶ 12.A. & D.; Docket Entries 19, 34, 36, 39.) As the United States has noted, at trial, she faced conviction on "[t]he conspiracy offense charged in the indictment [in case number 1:12CR76, which] carried a mandatory minimum sentence of ten years' imprisonment. [By accepting her Plea Agreement,] Petitioner was instead charged in [an] Information with a violation of 21 U.S.C. § 843(b), an offense that was punishable by not more than four years' imprisonment." (Docket Entry 31 at 11.) In the face of that compelling explanation for her decision to admit guilt to the lesser charge of facilitating a drug deal, rather than to risk trial on the more serious drug conspiracy charge, Petitioner "has provided only conclusory allegations [attacking her plea] which meet neither the error nor the prejudice prong of the Strickland analysis." Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22,

8

2009) (unpublished) (Dietrich, M.J.), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2009) (Beaty, C.J.).[6]

Nor can Petitioner maintain any claim based on "[d]enial of Safety Valve" (Docket Entry 18, ¶ 12.A.), in regards to the lawfulness of her sentence or the sufficiency of her counsel. The "safety valve" permits "[a] defendant [to] have h[er] base offense level reduced by two levels under [U.S.S.G.] § 2D1.1(b)[] if [s]he meets all five criteria set out in U.S.S.G. § 5C1.2(a)." United States v. Jones, 388 F. App'x 319, 320 (4th Cir. 2010).[7]

---

[6] For example, Petitioner's Memorandum of Law in Support of her Section 2255 Motion baldly declares "there was insufficient evidence of an agreement between her and someone else to distribute drugs, or any facts to sustain she had any actual involvement in the conspiracy. . . . Had she known she had a good basis to contest the unsupported [conspiracy charge], she would not [have] allowed her lawyer to talk her into accepting the plea deal." (Docket Entry 19 at 7.) Such conclusory statements about purportedly weak evidence cannot satisfy Petitioner's burden of showing that she would have proceeded to trial, particularly given that, at sentencing, (1) her new counsel (who had not represented Petitioner at the time of her guilty plea) acknowledged that the evidence documented in the PSR established her participation in the conspiracy (albeit, in her counsel's view, at a low level) (see Docket Entry 29 at 13), (2) the Court (per Judge Osteen) noted that the evidence of record showed Petitioner stored large quantities of marijuana in her apartment (id. at 14), and (3) the United States pointed to evidence that Petitioner engaged in extensive telephone contacts with a co-conspirator "for the purpose of facilitating the drug trafficking activity" (id. at 5) and that Petitioner made interstate "trips to pick up marijuana" (id. at 25). This same evidence also forecloses any effort by Petitioner to disavow her prior sworn admission that a factual basis existed for her plea. (Compare id. at 4-8, with Docket Entry 19 at 13.)

[7] At the time of the above-cited decision, the safety valve reduction provision appeared at U.S.S.G. § 2D1.1(b)(11). See
(continued...)

9

Petitioner's Plea Agreement did not promise any such reduction (see Docket Entry 3) and explicitly disavowed the existence of any promises outside her Plea Agreement's express terms (id., ¶ 9). Further, "[t]he fifth requirement [for a safety valve reduction] is that, by the time [the defendant] is sentenced, [s]he has truthfully provided to the Government all information and evidence [she] has concerning the offense or offenses. A defendant seeking [a safety valve] reduction . . . has the burden of proving that [s]he has satisfied [that requirement]." Jones, 388 F. App'x at 320 (internal brackets and quotation marks omitted) (citing United States v. Wilson, 114 F.3d 429, 432 (4th Cir. 1997)). Petitioner, however, has not shown that she met that requirement. (See Docket Entry 18, ¶ 12; Docket Entries 19, 34, 36, 39.)

The remaining claim in Ground One asserts in inscrutable fashion that either the Court or Petitioner's counsel unlawfully failed to prevent a "[d]isparity among defendants [sic] sentences[.]" (Docket Entry 18, ¶ 12.A.) In her Memorandum of Law in Support, Petitioner apparently attempts to clarify this claim by stating that, "[h]ad [her] counsel advised her to enter a plea in accordance to the Grand Jury's charge of Conspiracy to Distribute

---

[7](...continued)
Jones, 388 F. App'x at 320. By the time of Petitioner's sentencing, that provision appeared at Paragraph 16 of Subsection 2D1.1(b), see U.S.S.G. § 2D1.1(b)(16) (2011), and it now appears at Paragraph 17 of that Subsection, see U.S.S.G. § 2D1.1(b)(17) (2013).

10

100 Kilograms or more of Marijuana, as did her similarly situated co-defendants, she would have qualified for the 'safety valve' [reduction]. Thus, by following her counsel's erroneous advice, she was given a much harsher sentence than her more culpable co-conspirators, thus creating a disparity in sentencing." (Docket Entry 19 at 5.) In fact, as the United States has observed, "the safety valve adjustment is applicable in cases where a defendant has been convicted of a violation of 21 U.S.C. § 843(b)." (Docket Entry 31 at 6-7 (citing United States v. Warnick, 287 F.3d 299 (4th Cir. 2002)). As shown above, "Petitioner did not, however, qualify for the safety valve reduction because she failed to meet the fifth criterion set forth in U.S.S.G. § 5C1.2." (Id. at 7.) Accordingly, any difference between Petitioner's sentence and the sentences of her co-defendants attributable to her lack of a safety valve reduction and their receipt of one does not constitute an "unwarranted sentence disparit[y]," 18 U.S.C. § 3553(a)(6), that either her counsel or the Court should have addressed.

Finally (as to Grounds One and Four), Petitioner's Memorandum of Law in Support of her Section 2255 Motion suggests that the Court did not comply with the mandate of Section 3553(a)(6) to "consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" by pointing to the fact that two of the defendants charged in the Indictment in case number 1:12CR76 received lesser

11

prison sentences and another individual implicated in the conspiracy "went unindicted." (Docket Entry 19 at 5-6.) Said Memorandum, however, makes no effort to compare the conduct to which Petitioner admitted to any record material relating to the conduct of the two defendants in question (see id.); instead, it simply declares in conclusory fashion that Petitioner's "conduct was similar in nature to [the conduct of the unindicted individual]" (id. at 6). "Unsupported, conclusory allegations do not warrant an evidentiary hearing, much less relief." Whitley v. United States, Nos. 1:03CR445, 1:12CV67, 2014 WL 4443295, at *6 n.1 (M.D.N.C. Sept. 9, 2014) (unpublished) (recommendation of Webster, M.J., adopted by Beaty, S.J.) (citing Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999)).[8]

In sum, all of the claims presented in Grounds One and Four (even as developed by Petitioner's other filings) lack merit.

---

[8] In fact, the record shows that, at sentencing, Petitioner's counsel and the Court both responsibly addressed the issue of unwarranted sentence disparities among similarly-situated defendants. (See Docket Entry 29 at 15-17.) "Moreover, as [the Fourth Circuit] ha[s] repeatedly stated, the sentencing factor addressing sentencing disparities, 18 U.S.C. § 3553(a)(6), is aimed primarily at eliminating national sentencing inequity, not differences between the sentences of co-defendants." United States v. Robinson, 537 F. App'x 249, 251 (4th Cir. 2013) (citing United States v. Withers, 100 F.3d 1142, 1149 (4th Cir. 1996)).

<u>Grounds Two and Three: Ineffective Counsel (Medical and Mental Issues at Sentencing and Parsimony Provision of Section 3553(a))</u>

According to Ground Two of Petitioner's Section 2255 Motion, the Court "failed to properly consider [her] severe medical and mental issues." (Docket Entry 18, ¶ 12.B.) More specifically, the section of her Memorandum of Law in Support that discusses Ground Two asserts that the Court "erred in declining to depart downward for her physical impairments pursuant to U.S.S.G. § 5H[1].4." (Docket Entry 19 at 7.) That portion of said Memorandum also states: "[Petitioner's] counsel failed to adequately address the need for the [C]ourt to impose a sentence of home detention in order to allow her to continue on her heart monitor and medical care with doctors already familiar with her needs." (<u>Id.</u> at 8; <u>see also</u> <u>id.</u> ("[Petitioner's] counsel failed to adequately present the factors outlined by Section 3553(a) . . . .").) Similarly, Ground Three of Petitioner's Section 2255 Motion complains that the Court "failed to take into consideration [her] mental and emotional, and physical abuse suffered at the hands of her co-defendant and ex-husband." (Docket Entry 18, ¶ 12.C.; <u>see also</u> Docket Entry 19 at 10 ("[Petitioner] suffers from mental and emotional conditions stemming from abuse from her estranged husband and co-defendant . . . .") Lastly, Ground Three seeks relief based on the purported failure of the Court "to adhere to the Spirit of the Law in regard to sentencing . . . [and] to follow Supreme Court precedent and

13

consider the least amount of imprisonment pursuant to [Section] 3553(a)."  (Docket Entry 18, ¶ 12.C.; see also Docket Entry 19 at 11 ("[Petitioner's] counsel should have pursued a lesser sentence for [her] pursuant to § 3553(a).").)

The record conclusively refutes Petitioner's foregoing, unsupported contentions.  As an initial matter, prior to Petitioner's sentencing hearing, her counsel filed a Sentencing Memorandum which asked the Court to exercise its "discretion to vary from the [G]uideline recommendation . . . [and to] sentence [Petitioner] . . . to a term of probation."  (Docket Entry 9 at 13.)  In that filing, Petitioner's counsel presented a number of detailed arguments in support of that request, including that:

1) Petitioner "suffers from mental and emotional conditions . . . [mostly] stem[ming] from relationship issues with her estranged husband and co-defendant" (id. at 3; see also id. at 3-4 ("[P]etitioner describes their former marital relationship as both mentally and physically abusive. . . .  [Probation] would allow [Petitioner] to continue her current treatment . . . ."));

2) Petitioner's "physical conditions, in combination with her other specific offender characteristics warrant a departure downward, at the very least . . . [if not] an alternative to incarceration altogether" (id. at 5); and

3) "since a central goal of the Sentencing Guidelines is to eliminate sentencing disparity . . ., [Petitioner should receive]

a similar disposition as [two of] her codefendants [who received effectively probationary sentences, because] . . . she [is] less culpable than [them]" (id. at 12).

Further, at Petitioner's sentencing hearing, her counsel expressly "ask[ed] the Court [to] consider sentencing [Petitioner] to a term of probation" (Docket Entry 29 at 12), based on "her performance on pretrial release" (id.), her "above average employment history" (id.), her history as "a law-abiding person" (id. at 13), "her family ties" and "strong family support system" (id.), "her minor role in the overall conspiracy" (id.), the sentences received by some related defendants (id. at 15-17), her "emotional conditions . . . [of] depression and anxiety" (id. at 17; see also id. at 17-18 ("I would ask that [the Court] take [Petitioner's] emotional state into consideration as to why perhaps she wasn't as forthcoming as some of the other codefendants.")), and her "physical infirmities that are set out in the [PSR]" (id. at 18).[9] After hearing from the United States (see id. at 23-26) and from Petitioner directly (see id. at 26-28), the Court (per Judge Osteen) "decline[d] the request for a variance" (id. at 28). In so doing, the Court stated "that on these facts it would be very easy to see how [she] could [have] end[ed] up with an 8-, 9-, or 10-year sentence given [her] participation in this conspiracy."

---

[9] Petitioner's counsel also called two witnesses to elaborate about her positive qualities. (See Docket Entry 29 at 18-22.)

15

(Id. at 30; see also id. ("[L]ooking at the nature and circumstances of the offense . . . the telephone count . . . does not fully reflect the facts of [Petitioner's] participation in this very substantial conspiracy in this case.").) Ultimately, the Court concluded "that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment requires that a sentence within the advisory guideline range, that is, 48 months, is sufficient but not greater than necessary." (Id. at 30-31; see also id. at 31 ("In light of my responsibility under 18 USC Section 3553, I find that [Petitioner's] conduct in this particular case is too serious to permit or support a probationary sentence in this case.").)

The record thus reflects that Petitioner's counsel sought a variance to a probationary sentence by raising all reasonably available theories (including the very matters now referenced by Petitioner) and the Court obviously considered those arguments, as well as all relevant terms of Section 3553(a) (including the parsimony provision), but reasonably determined that the advisory Guideline imprisonment term of 48 months represented the proper sentence. Under these circumstances, Grounds Two and Three warrant no relief. See generally United States v. Louthian, 756 F.3d 295, 306 (4th Cir. 2014) ("Any sentence that is within or below a properly calculated Guidelines range is presumptively reasonable."); United States v. Rivera-Santana, 668 F.3d 95, 105

(4th Cir. 2012) ("[The defendant] argues that the district court . . . failed to consider any mitigating factors or the need to avoid unwarranted sentencing disparities in weighing the § 3553(a) factors. . . . [A] sentencing court need not explicitly discuss each factor on the record or robotically tick through § 3553(a)'s every subsection. . . . [I]t is evident that the court deemed the factors argued in mitigation . . . insufficient to outweigh the aggravating factors. And it was well within the court's discretion to accord more weight to the host of aggravating factors and decide that the sentence imposed would serve the § 3553(a) factors, on a whole." (internal quotation marks omitted)); Hernandez v. United States, Civ. Action No. 09-4563(FLW), 2010 WL 3271530, at *3 (D.N.J. Aug. 17, 2010) (unpublished) ("The [c]ourt finds [the petitioner's] [ineffective assistance] claims without merit because his counsel specifically argued all the factors [the petitioner] advances here . . . . [I]t is clear that defense counsel competently argued for a variance and was certainly far from being inadequate under the first Strickland prong.").

## CONCLUSION

All of Petitioner's claims fail as a matter of law.[10]

---

[10] The claims in Petitioner's Section 2255 Motion all relate to her plea and sentence; in other words, nowhere in Grounds One through Four (or her Memorandum of Law in Support) does Petitioner identify a claim for ineffective assistance of counsel on appeal. (See Docket Entry 18, ¶ 12.A.-D.; Docket Entry 19.) However, in
(continued...)

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 18) be denied without issuing a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 30, 2015

---

[10](...continued)
response to a directive on the form she used to submit her Section 2255 Motion stating, "[i]f you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not" (Docket Entry 18, ¶ 11(d)), Petitioner wrote that she "[r]equested several times that Counsel file a direct appeal . . . [and that she had] correspondence showing his refusal to file" (id.). Similarly, when asked "[to] state briefly what [claims in Grounds One through Four] were not [previously] presented, and [to] give [her] reasons for not presenting them" (id., ¶ 13), she wrote "ineffective counsel refused to file appeal, even though [she] requested numerous times" (id.). In its Response, the United States candidly acknowledged those statements, but noted that they did not form part of a ground for relief. (See Docket Entry 31 at 4 n.2.) Petitioner's Reply never disputes that point, but nonetheless suggests the Court should grant her a new chance to appeal. (See Docket Entry 34 at 2-5; see also Docket Entries 34-1, 34-2, 34-3 (correspondence from Petitioner's counsel to Petitioner).) Even if the Court treats Petitioner as having properly raised a claim of appellate ineffective assistance of counsel, it should deny relief. "Once [a federal criminal defendant] unequivocally instruct[s] h[er] attorney to file a timely notice of appeal, h[er] attorney [i]s under an obligation to do so." United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007) (emphasis added). None of Petitioner's filings on point show that she timely and unequivocally instructed her counsel to file a notice of appeal. (See Docket Entry 18, ¶¶ 11(d), 13; Docket Entry 31 at 2-5; Docket Entries 34-1, 34-2, 34-3.)